[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Introduction
The Plaintiff, M.F. Barrea Plumbing, LLC., brings this action in three counts against the Defendant, Jacques and Sons Land Development, Inc. In the First Count of the Amended Complaint the Plaintiff claims breach of express contract. The Plaintiff claims that the Defendant was in the business of developing residential subdivisions and that during the period from on or about December 1, 1997 to and through on or about November 30, 1998, the Defendant entered into one or more express oral contracts with the Plaintiff in which the Plaintiff agreed to serve as the plumbing subcontractor and vendor of certain plumbing services, supplies, material, products and fixtures for several new homes for which the Defendant was the general contractor and/or builder. Pursuant to those contracts the Plaintiff claims it fully performed certain services and provided certain supplies, materials, products and fixtures. The Plaintiff claims that there is due from the Defendant, pursuant to such contracts, the sum of $9,687.62, which the Defendant has not paid. In the Second Count the Plaintiff basically asserts the same facts and alleges that by its actions the Defendant entered into an implied contract or contracts with the Plaintiff for such services and supplies. In the Third Count the Plaintiff makes a claim in quantum meruit for the fair market value of its services, supplies, materials, products and fixtures performed or provided to the Defendant in the amount of $9,687.62. The Defendant filed an answer with Special Defenses as well as a Counterclaim. In the Special Defenses, the Defendant claims that the contract between the parties provided for a fixed payment for plumbing materials and labor for each dwelling, which payment was paid in full by the Defendant, and that the contract between the parties required the Plaintiff to contract for all extra work above the flat rate directly with the prospective dwelling owner. In the Counterclaim the Defendant claims that the Plaintiff contracted with the Defendant to provide plumbing fixtures and labor to lot 2 Wintergreen and that the Plaintiff was paid in full for all fixtures at said dwelling and the Whirlpool tub CT Page 3712 provided by the Plaintiff was defective, requiring the Defendant to replace it, for which the Defendant claims $1,900 damage.
Trial on this matter was held on December 18, 2002. At that time the court heard testimony from Michael Barrea, a representative of the Plaintiff; Benjamin Bishop, a buyer of one of the Defendant's homes; and Rejean Jacques, a representative of the Defendant; and received fourteen exhibits.
 Findings of Facts
Certain facts alleged by the Plaintiff in the Amended Complaint have been admitted by the Defendant. The Defendant admits that at all relevant times the Defendant, Jacques and Sons Land Development, was a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business at 49 Jacques Lane, Glastonbury, Connecticut. The Defendant also admits that at all relevant times, Jacques and Sons was in the trade or business developing residential subdivisions, contracting for the construction of and/or building new homes in and about the Town of Glastonbury, Connecticut. The Defendant also admits that during the period from on or about December 1, 1997 to and through on or about November 30, 1998, Jacques and Sons entered into one or more express oral contacts with the Plaintiff whereby the Plaintiff would serve as the plumbing subcontractor and vendor and provide certain plumbing services, supplies, materials, products and fixtures for several new homes for which Jacques and Sons was the general contractor and/or builder. The Defendant also admits that during the period from on or about December 1, 1997 to and through on or about November 30, 1998, Jacques and Sons engaged, requested and/or authorized the Plaintiff to serve as the plumbing subcontractor and vendor of certain plumbing services, supplies, products and fixtures for several new homes. The Defendant also admits that by its actions, Jacques and Sons did enter into an implied contract or contracts with the Plaintiff to perform such services and to supply such plumbing supplies, materials, products and fixtures.
Based upon a preponderance of the evidence the court finds the following additional facts. In 1996, the Plaintiff began doing plumbing work for the Defendant for the homes he was building. They agreed that the Plaintiff would receive a set price based on the number of bathrooms in the home. That is, there was a certain price for a two and a half bath house; a three and a half bath house; etc. The Plaintiff would bill the Defendant for about one half of the price when the rough plumbing was done and after the job was complete the Plaintiff would submit a final bill to the Defendant for the balance and any extras. The Plaintiff CT Page 3713 didn't perform any extra work unless instructed by the Defendant to do so. The Plaintiff did about forty to forty-five new homes for the Defendant during their association. The Plaintiff was paid for all except three. Those are Lot 13 Wintergreen; Lot 15 Wintergreen; and Lot 11 Jacques Lane.
For Lot 13 Wintergreen the Plaintiff billed the Defendant $2,179.16 for extras. The Defendant had paid the base price due. Of this amount, the homeowner paid $1,225.16 leaving a balance claimed of $954. The homeowner believed this amount was included in the price of the house. It was not the usual practice between the Plaintiff and the Defendant that the homeowner pay the Plaintiff directly. The Plaintiff normally billed the Defendant for any extras and the Defendant would recoup from the buyer, at the closing, any charges that were not included in the base purchase price of the house. During their association, the parties never had any problems with this arrangement until the three houses at issue here. As to Lot 15 Wintergreen the base price of the Plaintiff's work was $9,600. The Plaintiff received $4,500. During the course of this job the Plaintiff ceased working for the Defendant and never completed the job. The Plaintiff offered to complete it in February 1999. The Plaintiff had done the rough plumbing and needed only to set the fixtures. Since the Defendant was supplying certain fixtures to be used in this house the Plaintiff credited the Defendant with $1,115 leaving a balance of $3,985. The Defendant hired Excell Plumbing Co. to finish the work at a cost of $3,500. As to Lot 11 Jacques Lane, the Plaintiff was paid for the base cost of the project but not the extras which totaled $4,748.62. The homeowner compromised the charges for the extras with the Defendant and paid the Defendant $1,000 to resolve the claim.
As to the counterclaim, in which the Defendant claims that the Plaintiff installed a defective Whirlpool in the house at Lot 2 Wintergreen, the Defendant claims it was required to replace the Whirlpool at a cost of $1,900. The Defendant replaced the Whirlpool in December 2001. The Defendant retained the $1,000 paid on Lot 11 to offset the cost of the Whirlpool. Therefore the Defendant agrees that it is owed only $900 on the counterclaim. The Plaintiff was not aware of any problem with the Whirlpool until the counterclaim was filed.
 Discussion
The credible evidence established that the agreements here were between the Plaintiff and the Defendant, not the Plaintiff and any homeowner. The Defendant agreed that it would pay the Plaintiff a set price per home plus any extras. Although the Defendant claims that the cost of any extras was the responsibility of the homeowner, the Plaintiff was hired by the CT Page 3714 Defendant and billed the Defendant; and that was the practice for some time. At the closing on the house the Defendant usually recovered any amount due the Plaintiff from the homeowner.
Although the Defendant attempted to dispute the amount of the extras billed by the Plaintiff, especially as to Lot 11 Jacques Lane, the court credits the Plaintiff's representative's testimony regarding the materials and services the Plaintiff provided. The Defendant's defense centered upon whether the services and materials provided by the Plaintiff were in fact extras as to Lot 11 Jacques Lane and Lot 13 Wintergreen. However, there was no evidence presented as to what items or their values were to be included in the base price and therefore what was to be considered extra. Although the Defendant apparently, through the testimony of Bishop, sought to characterize this dispute as one between the homeowner and the Plaintiff, the fact remains that the agreement for the work performed on the houses was between the Plaintiff and the Defendant, not the Plaintiff and the homeowner. The fact that a compromise, of what was owed by Bishop to the Defendant for the extras supplied by the Plaintiff was reached between them, is of little probative value to the court since it was rendered without input from the Plaintiff and the Defendant simply accepted Bishop's analysis of what he believed was due for extras. In fact, at trial the Defendant did not express an opinion as to whether he believed Bishop's assessment of the Plaintiff's charges was fair. The Plaintiff did agree that as to his bill for extras for Lot 11 he should have offset the cost of the oil-fired hot water heater with the cost of the gas hot water burner which was included in the base price. However, the Defendant did not present any evidence as to the value of the gas hot water burner and the amount of any credit. Therefore the court accepts the value of the extras as set forth in the Plaintiff's invoices for Lot 11 Jacques Lane and Lot 13 Wintergreen and the Plaintiff is entitled to recover the $954 due on Lot 13 Wintergreen and $4,748.62 due on Lot 11 Jacques Lane.
As to the amount due on Lot 15, the Plaintiff did not complete the job and the Defendant hired another plumber to do so. Although the Plaintiff claims that he offered to complete the job and was prevented from doing so by the Defendant, the Plaintiff admitted that in the fall of 1998 he was starting to get out of the plumbing business. The complaint alleges that the Plaintiff's agreement with the Defendant was only through approximately November 1998. The Plaintiff's offer to complete the job was not made until February 1999. By that time the parties had voluntarily terminated their relationship and the Defendant was not obligated to continue to use the Plaintiff's services. Therefore the Plaintiff is not entitled to recover any amount on Lot 15. CT Page 3715
As to the counterclaim, there was no proof submitted that the Plaintiff was responsible for the defects in the Whirlpool and in fact it was not replaced until December 2001, almost three years after the Plaintiff ceased work on the Defendant's properties. The Plaintiff was not aware of any problem with the Whirlpool until the filing of the counterclaim nor did the Defendant ever bill the Plaintiff for the new Whirlpool. Therefore the Plaintiff is not liable on the counterclaim.
Therefore the court finds that the Defendant owes the Plaintiff $954 on Lot 13 Wintergreen and $4,748.62 on Lot 11 Jacques Lane for a total of $5,702.62.
 Conclusion
Judgment shall enter for the Plaintiff on the amended complaint against the Defendant in the amount of $5,702.62. Judgment shall enter for the Plaintiff on the Defendant's counterclaim.
Jane S. Scholl, J. CT Page 3716